# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDERJEET SINGH,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>    Respondents. | Case No.: 1:25-cv-01632-SKO (HC)<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING RESPONDENTS TO PROVIDE PETITIONER WITH A BOND HEARING BEFORE AN IMMIGRATION JUDGE<br><br>ORDER DIRECTING RESPONDENT TO NOTIFY THE COURT OF HEARING OR RELEASE<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |

       Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. All parties having consented to the jurisdiction of the Magistrate Judge, on December 17, 2025, the case was assigned to the undersigned for all purposes, including trial and entry of final judgment. (Doc. 12.)

       Petitioner filed the instant petition on November 24, 2025. (Doc. 1.) On January 21, 2026, Respondent filed a response[1] to the petition. (Doc. 17.)

---

[1] The response does not address Petitioner's due process claim that he is being indefinitely detained without a bond hearing. Rather, Respondent argues that statutorily, Petitioner's detention is mandated. Respondent requests a stay pending the Ninth Circuit's resolution of Rodriguez v. Bostock, 779 F.Supp.3d 1239 (W.D.

1

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be immediately released, or alternatively, provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will grant the petition and direct Respondents to provide Petitioner with a bond hearing before an immigration judge.

I.     BACKGROUND[2]

Petitioner is a national and citizen of India who has been detained since March 12, 2025. (Doc. 1 at 5; see also https://acis.eoir.justice.gov/en/caseInformation (search conducted on January 22, 2026, utilizing Petitioner's A-number). He is currently in removal proceedings. (Id.) He states he has filed applications for asylum, withholding of removal and the Convention Against Torture. (Id.) His next master calendar hearing is set for February 13, 2026. (Id.) It appears he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1).

II.    DISCUSSION

A.   Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have

---

Wash. 2025), claiming a decision would likely be dispositive of the issues in this case. The Court is not persuaded. Bostock concerns the statutory basis of an immigrant's detention. It does not address Petitioner's claim that his lengthy detention without a bond hearing violates his Fifth Amendment due process rights. The Court will therefore operate on the premise that Respondent does not contest Petitioner's due process claim.

[2] The facts are limited. Petitioner provides scant details on his background in his petition. In addition, Respondent does not provide any relevant portions of the A-File as directed in the Court's order to respond.

jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

B. Mandatory Detention under 8 U.S.C. § 1225(b)(1)

Petitioner states he has been in continuous detention since approximately March 12, 2025. He complains the approximately 10-month period has become prolonged and indefinite, and he should be given a bond hearing, or in the alternative, released from custody.

1. Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1). Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in expedited removal proceedings.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Here, Petitioner made a claim

for asylum. It appears the matter is before the immigration court with the next hearing set for February 13, 2026.

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).  However, an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

### 2. Due Process in Prolonged Immigration Detention

Petitioner contends he has been unreasonably detained for over 10 months without a bond hearing in violation of his due process rights.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which stated that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).  Including this Court, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." Maliwat v. Scott, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting Banda v. McAleenan, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months); see also Rogers v. Ripa, No. C21-24433, 2022 WL 708493, at *4-5 (S.D. Fla. Jan. 22, 2022), *report and recommendation adopted*, 2022 WL 574389 (Feb. 25, 2022); Romero Romero v. Wolf, 2021 WL 254435, at *3 (N.D. Cal. Jan. 26, 2021); Leke v. Hott, 521 F. Supp. 3d 597, 604-05 (E.D. Va. 2021); Martinez v. Clark, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019); Thompson v. Horton, 2019 WL 4793170, at *5 n.7 (N.D. Ala. Aug. 26, 2019).

The Ninth Circuit has also noted that many courts have applied the Mathews[3] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing when subjected to prolonged detention. See, e.g., A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025); Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL

---

[3] Mathews v. Eldridge, 424 U.S. 319 (1976).

4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

Also, the Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner has been detained over 10 months. This period is greater than the six-month presumptively reasonable period set forth in Zadvydas and qualifies as prolonged. 533 U.S. at 701.

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered. 53 F.4th at 1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. In this case, it appears Petitioner has not been afforded much in the way of due process. He states he requested release on bond but the immigration judge refused, stating he had no power to provide such relief. (Doc. 1 at 5.) In addition, there is no allegation that Petitioner's prolonged detention is due to his own actions. Rodriguez Diaz, 53 F.4th at 1208; Demore, 538 U.S. at 530-31.

In sum, Petitioner's detention of 10 months is longer than the 6-month presumptively reasonable period, and there is no evidence that Petitioner has acted to prolong detention. Thus, the first factor weighs in favor of Petitioner.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor weighs in favor of Petitioner. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3. Here, there is no indication that the Government has ascertained whether Petitioner presents a risk of flight or danger to the public and whether alternatives to detention are available. Thus, the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because the Government has apparently provided no such procedural safeguards. Given that Petitioner has been held without a bond hearing for over 10 months, and it is not clear when detention will end, the risk of erroneous deprivation weighs in favor of granting a bond hearing.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases). Here, the government's asserted interest is hinged on mere speculation about Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006). Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254,

7

*7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's.

On balance, the Mathews factors weigh in Petitioner's favor and outweigh the Government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community. The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

C. Bond Hearing

Having determined that a bond hearing is required, the next question is who bears the burden of proof at the hearing. Petitioner contends that the Government should bear the burden of proof to justify detention by clear and convincing evidence. Respondent contends that Petitioner should bear that burden.

The Court finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)); Black v. Decker, 103 F.4th 133, 159 (2d Cir. 2024) (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020) (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017); Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing

appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is GRANTED;
2) Respondent is DIRECTED to provide Petitioner with a bond hearing within thirty (30) days before an IJ where the Government must demonstrate by clear and convincing evidence that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision; and
3) Respondent is DIRECTED to notify the Court within three (3) days of the date Petitioner is granted a bond hearing or released; and
4) The Clerk of Court is DIRECTED to enter judgment. The Court will close the case once Respondent notifies the Court of the bond hearing or Petitioner's release.

IT IS SO ORDERED.

Dated: **January 22, 2026**         /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE